**RYAN M. ANDERSON, ESQ.**
Nevada Bar No.: 11040
**LAUREN CALVERT, ESQ.**
Nevada Bar No.: 10534
**MORRIS ANDERSON**
716 S. Jones Blvd.
Las Vegas, Nevada 89107
Phone: (702) 333-1111
Fax: (702) 507-0092
Ryan@MorrisAndersonLaw.com
Lauren@MorrisAndersonLaw.com
*Attorneys for Plaintiff William Kluesner*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM KLUESNER,<br><br>Plaintiff,<br><br>v.<br><br>LUMBER LIQUIDATORS, INC., a Delaware Corporation<br><br>Defendants. | CASE NO:<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:<br>1. Violations of Nevada's Deceptive Trade Practices Act (NRS 598 et seq.);<br>2. Fraudulent Concealment; and<br>3. Breach of Implied Warranty.<br><br>DEMAND FOR A JURY TRIAL |

Plaintiff William Kluesner ("Plaintiff"), by and through their attorneys, bring this action against Defendant Lumber Liquidators, Inc. ("Defendant"). Plaintiff hereby alleges, on information, belief, and personal knowledge, as follows:

**INTRODUCTION**

1. Since 1988, the State of California has recognized that formaldehyde gas is a chemical known to cause cancer. By 1992, the California Air Resources Board ("CARB") had formally listed formaldehyde as a contaminant with no safe level of exposure.

2. Certain building materials, including laminate flooring, are processed in a way that introduces formaldehyde into the material during manufacturing. In response, the CARB has passed regulations limiting the amount of formaldehyde that may be present. Specifically, the California

Code of Regulations, title 17, (which addresses public health), sections 93120 through 93120.12 are known as the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Regulations"). The regulations apply to anyone who manufacturers, distributes, imports, sells, or supplies the designated materials in California.

3. Defendant is a corporation that distributes, markets, and/or sells laminate wood flooring products in California that is subject to 17 California Code of Regulations sections 93120 through 93120.12.

4. Defendant supervises and controls the manufacturing of its laminate wood flooring that takes place in China. Laminate wood flooring consists of a core of pressed wood [commonly referred to as medium-duty fiberboard ("MDF")], which is made up of wood particles bonded together with glue or resin, a high quality photographic image of wood, and a scratch resistant coating. On information and belief, urea-formaldehyde resin is used to bond the wood particles together in the MDF core of laminate flooring.

5. For at least the last two years, certain laminate wood flooring ("Formaldehyde Flooring") manufactured, distributed, sold, and/or controlled by Defendant has contained formaldehyde in excess of the levels allowed under the CARB Regulations ("Design Defect").

6. Defendant supervises and/or controls the manufacturing and packaging of Formaldehyde Flooring in China that Defendant then distributes, markets, and/or sells in California.

7. Plaintiff brings this action asserting claims under Nevada's Deceptive Trade Practices Act (NRS. 598 et seq.); fraudulent concealment; and breach of implied warranty. Plaintiff seeks damages and equitable relief, which relief includes but is not limited to the following: As a proximate result of Lumber Liquidators' violation of Nevada's Deceptive Trade Practices Act, Lumber Liquidators has been unjustly enriched at the expense of the Plaintiff, and Lumber Liquidators should be required to return to the Plaintiff the purchase price of the Formaldehyde Flooring pursuant to NRS

598.0993 of Nevada's Deceptive Trade Practices Act. Plaintiff seeks an order from the court enjoining Lumber Liquidators, and those in concert and participation with it, from conducting or participating in the acts Deceptive Trade Practices alleged herein.

8. Further, Plaintiff's health was severely damaged as a result of breathing the toxic formaldehyde fumes he encountered as a result of installing Defendant's product in his home;

9. Further, as Plaintiff is an "elderly person", as defined by NRS 598.0933 and NRS 598.0936, respectively, Plaintiff seeks actual damages, punitive damages and reasonable attorney's fees pursuant to NRS 598.0977. The collection of any restitution award has priority over the collection of any civil penalty imposed pursuant to NRS 598.0973.

**PARTIES**

10. Plaintiff William Kluesner resides in Las Vegas, Nevada.

11. Plaintiff purchased Formaldehyde Flooring believing it to be reasonably safe to use for the purpose for which they were intended.

11. Defendant Lumber Liquidators, Inc., is a Delaware corporation with its headquarters and principal place of business in Toano, Delaware. Defendant conducts substantial business in the State of Nevada, and in the County of Clark.

**JURISDICTION AND VENUE**

12. This Court has personal jurisdiction over the parties in this action by the fact that Defendant is a corporation that is authorized to conduct business in Nevada and it has intentionally availed itself of the laws and markets of Nevada through the promotion, marketing, distribution and sale of its laminate wood flooring products. Plaintiff purchased his Formaldehyde Flooring in Nevada.

13. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a), because Defendant transacts a substantial amount of its business in this

District.

## FACTUAL ALLEGATIONS

16. On or about December 30, 2014, Plaintiff purchased Kensington Manor Warm Springs Chestnut12mm laminate flooring from Lumber Liquidators' Las Vegas store No. 1290 for a total purchase price of $2,758.45. The label on the packaging read, *inter alia:* "CARB CALIFORNIA PHASE 2 Compliant for Formaldehyde."

17. Despite the fact that the Formaldehyde Flooring fails to meet California's requirements for formaldehyde emissions, Defendant has made numerous representations to the contrary. Defendant's packaging and website expressly represent to consumers in Nevada that the Formaldehyde Flooring meets California's CARB Regulations.

18. Defendant's website leads consumers to believe that its laminate wood flooring products comply with the CARB formaldehyde standards when they do not. The website states as follows:

<u>Is Lumber Liquidators Compliant with the California law?</u>

**Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards.** The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

<u>Does CARB only apply to California?</u>

Though it currently applies only to products sold in California, **Lumber Liquidators made a**

**decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended** to sell the products in California or any other state/country.

<u>What extra steps does Lumber Liquidators take to ensure compliance?</u>

In addition to the California Air Resources Board requirements, **Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing.**

19. Moreover, the product packaging for Defendant's laminate wood flooring states: "CARB ..CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde." On information and belief, this statement is presented on all of Defendant's laminate flooring product packaging regardless of whether the flooring inside the packaging complies with the CARB Regulations.

20. On information and belief, at all times relevant to this action, Defendant has knowingly misrepresented its laminate wood flooring products as CARB compliant and knowingly failed to disclose to consumers the unlawful levels of formaldehyde emissions from its laminate wood flooring products

21. Plaintiff has suffered injury in fact and loss of money, property, and damage to his person. Plaintiff has been damaged in the amount they paid for Formaldehyde Flooring. Moreover, if no safe replacement laminate wood flooring product exists, Plaintiff has suffered damages in the amount of the full price they paid for Formaldehyde Flooring and the cost to remove Formaldehyde Flooring and installation for replacement flooring. In the event safe replacement laminate wood flooring exists, Plaintiff's damages are the cost of replacing the defective Formaldehyde Flooring as well as the medical bills incurred by Plaintiff as a result of damage to his lungs and person from breathing in the toxic fumes resulting from Defendant's negligence.

# FIRST CAUSE OF ACTION

## Violations of Nevada's Deceptive Trade Practices Act

### (NRS § 598 et seq.)

22. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as if fully set forth herein.

23. The acts, omissions, and practices of Defendant as alleged herein constituted, and continue to constitute deceptive trade practices within the meaning of NRS §§ 598.0915 and 598.0925. Plaintiff has standing to bring this action under NRS § 598.0993 because they have suffered injury in fact and have lost money because of the Defendant's conduct.

24. Defendant has engaged in "deceptive trade practices" by, in the course of its business or occupation, knowingly making a false representation that the Formaldehyde Flooring was compliant with the CARB Regulations for formaldehyde, when in fact it was not.

25. Defendant's actions described herein constitute deceptive trade practices within the meaning of NRS §§ 598.0915 and 598.0925 in that Defendant has failed to disclose that the Formaldehyde Flooring contains the Design Defect. Defendant's failure to disclose the Design Defect was likely to mislead Plaintiff into believing that the Formaldehyde Flooring was free from defect and safe to use.

26. As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of Plaintiff.

27. The aforementioned unlawful or unfair business acts or practices conducted by Defendant has been committed in the past and continue to this day. Defendant has failed to acknowledge the wrongful nature of its actions. Defendant has not corrected or publicly issued individual and comprehensive corrective notices to Plaintiff or provided full restitution and

disgorgement of all ill-gotten monies either acquired or retained by Defendants as a result thereof, thereby depriving Plaintiff of laminate wood flooring that does not have an unreasonable risk of harm for personal injury.

28. Pursuant to NRS § 598.0993, Plaintiff seeks an order of this Court requiring Defendant to disgorge all ill-gotten gains and awarding Plaintiff full restitution of all monies wrongfully acquired by Defendant by means of such deceptive conduct, so as to restore any and all monies to Plaintiff and the general public, which were acquired and obtained by means of such deceptive conduct, and which ill-gotten gains are still retained by Defendant. Plaintiff additionally requests that such funds be impounded by the Court or that an asset freeze or constructive trust be imposed upon such monies by Defendant. Plaintiff may be irreparably harmed and/or denied and effective and complete remedy if such an order is not granted.

## SECOND CAUSE OF ACTION

### Fraudulent Concealment

29. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as if fully set forth herein.

30. Defendant advertised and/or marketed its Formaldehyde Flooring to be safe, of good quality free from defects, and that they would perform in their reasonably expected operation and/or use for their full useful lives. Defendant failed to disclose that its Formaldehyde Flooring contained a Design Defect, as described above, and that the Design Defect posed a serious risk of personal injury. These facts were not known to Plaintiff.

31. Alternatively, Defendant intentionally failed to disclose the fact that its Formaldehyde Flooring contained a Design Defect, a fact that was only known to Defendant, and Plaintiff could not have discovered it. Plaintiff is informed and thereon believes that Defendant knew of the Design Defect from its performance of standard testing prior to placing the Formaldehyde Flooring into the

stream of commerce.

32. Plaintiff reasonably relied and continue to rely upon Defendant to sell laminate wood flooring without a Design Defect that causes an unreasonable risk of harm. Defendant knew or ought to have known that Plaintiff relied and/or continues to rely upon Defendant to sell laminate wood flooring in which the entire lifetime of the goods could be fully used without an unreasonable risk of harm. Defendant's knowledge that its Formaldehyde Flooring contains a Design Defect combined with Defendant's knowledge that Plaintiff relied upon Defendant to communicate the true state of facts relating to its Formaldehyde Flooring creates a legal obligation on Defendant's part to disclose to Plaintiff these facts. Defendant is in a superior position to know the truth about, and the nature of, the Formaldehyde Flooring.

33. Defendant intended and intends to deceive Plaintiff by failing to disclose that the Formaldehyde Flooring contains a Design Defect and is likely to fail in advance of their reasonably expected useful life inasmuch as it causes an unreasonable risk of harm to consumers.

34. Defendant's failure to disclose the Design Defect and risk of harm was material. Plaintiff would not have purchased the Formaldehyde Flooring had they known of the Design Defect and risk of harm, which is significant, recognizable, real, and demonstrable. Moreover, this same Design Defect, if not remedied, can result in catastrophic personal injury.

35. Plaintiff was severely harmed by breathing in toxic fumes. As a proximate result of Defendant's conduct as set forth in this cause of action, Plaintiff will now be required to remedy the Design Defect, described above, so as to avoid the distinct likelihood that they may suffer further personal injury as a result of such Design Defect. In addition, Plaintiff has suffered damages, which include, but are not limited to the cost to repair the Design Defect. More egregiously, Plaintiff's personal health has suffered as a result of the faulty design of the product which has caused Plaintiff to incur substantial medical expenses.

36. Defendant's concealment was a substantial factor in causing that harm.

37. The wrongful conduct of Defendant, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious, and/or in conscious disregard for the wellbeing of Plaintiff along with other members of the public that may be personally injured by the excessive levels of Formaldehyde gas emitted from the Formaldehyde Flooring. Defendant intended to cause injury to the Plaintiff placing profits over safety. Defendant engaged, and continues to engage, in despicable conduct with a willful and conscious disregard of the rights or safety of others. Defendant subjected, and continues to subject, Plaintiff to cruel and unjust hardship. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant in an amount to deter it from similar conduct in the future.

### THIRD CAUSE OF ACTION

### Breach of Implied Warranty

38. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as if fully set forth herein.

39. By placing its Formaldehyde Flooring in the stream of commerce, Defendant impliedly warranted that its Formaldehyde Flooring was reasonably safe for its intended use, i.e., to provide flooring without exposing consumers to excess levels of formaldehyde gas.

40. Defendant's Formaldehyde Flooring is not merchantable. In breach of the implied warranty of merchantability, Defendant's Formaldehyde Flooring emits unlawful amounts of Formaldehyde gas.

41. Defendant's Formaldehyde Flooring was not reasonably safe for its intended use when it left Defendant's control and entered the market.

42. The Formaldehyde Flooring defects were not open and/or obvious to consumers.

43. Any purported limitation of the duration and scope of the implied warranty of

merchantability given by Defendant is unreasonable, unconscionable and void, because Defendant knew or recklessly disregarded that the defect in the Formaldehyde Flooring existed and might not be discovered, if at all, until the Formaldehyde Flooring had been used for a period of time longer than the period of any written warranty, and Defendant willfully withheld information about the defect from purchasers of Formaldehyde Flooring. Moreover, due to the unequal bargaining power between the parties, Plaintiff had no meaningful alternative to accepting Defendant's attempted proforma limitation of the duration of any warranties.

44. As a result, Plaintiff has been damaged in, inter alia, the amount they paid to purchase and replace Defendant's un-merchantable Formaldehyde Flooring, and if no safe replacement exists, in the amount they paid for their Formaldehyde Flooring and the cost to remove and replace it with non-toxic flooring. Furthermore, Plaintiff's health has been irreparably harmed and he has expended great financial resources on medical treatments for the damage caused by Defendant's Defective Product.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, requests the following relief:

A. Injunctive relief prohibiting Defendant from continuing to distribute and/or sell laminate flooring products that violate the CARB Regulations;

B. Restitution of all monies Defendant received from Plaintiff based on its violation of NRS §598.0993;

C. Damages to be determined in at trial including actual, compensatory, and consequential damages incurred by Plaintiff;

D. An award of reasonable attorneys' fees and costs; and

/ / /

/ / /

/ / /

E. That the Court award such other and further relief as this Court may deem appropriate.

DATED this 30th day of January, 2017.

Respectfully submitted,

**MORRIS//ANDERSON**

By: */s/ Ryan M. Anderson*
**RYAN M. ANDERSON, ESQ.**
Nevada Bar No.: 11040
**LAUREN CALVERT, ESQ.**
Nevada Bar No.: 10534
716 S. Jones Blvd.
Las Vegas, Nevada 89107
*Attorneys for Plaintiff William Kluesner*

## **DEMAND FOR JURY TRIAL**

Plaintiff further requests that the Court grant a Jury Trial for all claims so triable.

DATED this 30th day of January, 2017.

Respectfully submitted,

**MORRIS//ANDERSON**

By: */s/ Ryan M. Anderson*
**RYAN M. ANDERSON, ESQ.**
Nevada Bar No.: 11040
**LAUREN CALVERT, ESQ.**
Nevada Bar No.: 10534
716 S. Jones Blvd.
Las Vegas, Nevada 89107
*Attorneys for Plaintiff William Kluesner*